*399 OPINION OF THE COURT
Joseph J. Traficanti, Jr., J.
Two petitions dated August 5, 1996 and August 26, 1996 respectively are before the court in which the Petitioner mother (Petitioner) seeks permission to relocate with the child to the State of North Carolina; and the noncustodial father opposes the petition and cross-petitions for a change in custody if the mother relocates so that the child will remain with the father in New York State.
The Petitioner, Leslee Stearns, is the mother of a child born on June 21, 1989, who is now seven years of age. Petitioner in the cross-petition, Anthony Baxter, Sr. (hereinafter referred to as Respondent), is the father of the child. The couple have never been married. Paternity was previously established by Family Court order dated June 15, 1992. Custody was placed with Ms. Stearns by Family Court order dated June 19, 1992; visitation was also ordered. For the most part the parties have by mutual agreement expanded and modified the visitation between themselves without the necessity of judicial intervention. However, the recent events of these proceedings somewhat soured the relationship to the detriment of both parties and the child.
Petitioner Stearns now requests that the terms of custody and visitation be amended to permit her to move with the child to the State of North Carolina, where she avers in her petition that she will better be able to meet the needs of the child and "enhance her earning capacity”. She opines that this will not interfere with or hinder the Respondent’s visitation rights, and at any rate, the best interest of the child will be best served by this move. In fact she offers extensive visitation during summer and school breaks and weekend visitation virtually monthly. She has also offered to pay for the rather costly air-travel arrangements which would be necessary to bring such a plan to fruition.
The Respondent father in a cross petition prays for custody also claiming the best interest of Anthony, Jr. would be thus served and emphasizing that such a move would deprive him of meaningful contact with his child. The matters were tried jointly, and finally submitted, on January 10, 1997.
The dilemma here is that both parents are caring and loving; and both want to take part in, and indeed have taken part in, the upbringing and well-being of this normal and active child. They live close to each other, enabling frequent visita *400 tion without the necessity of time-consuming and costly extended travel. The mother has been very attentive to the child’s schooling in which he is doing extremely well. She has taken part in his scouting activities, karate, and has been assistant soccer coach. The child has also played Little League. He appears to be thriving. The father takes him fishing, rides a recreational vehicle with him and generally enjoys the outdoors, as well as family life with the paternal relatives. The father and his wife, Debra, are very supportive of his school work and performance and seem to cherish the time allotted to them for visitation. The father has also met his court-ordered support obligations and, in fact, provided support for clothing and other items beyond the legal requirement, apparently recognizing the moral obligation.
Petitioner’s life, however, has changed. She has accepted a proposal of marriage by David Barnes. The rub comes, however, in the fact that Mr. Barnes has settled in Wake Forest, North Carolina, where he has responsible employment and an attractive home in a rural setting. He also has some extended family in North Carolina. While he has had a brush with the law for a drinking/driving situation, he appears on this record to be a hard-working individual who has invested an inheritance and lives a responsible existence. He also likes fishing; and although he hasn’t had great opportunity to bond with the child, given the opportunity, he would no doubt be a fine surrogate father.
Certainly, the Petitioner mother’s motives for the move to North Carolina are proper and sound. She has a wonderful opportunity to start a new life with a man she loves and who loves her. There is a fine home waiting for her and a job with his company, although she sees it as a temporary starter job with intentions to look elsewhere.[1] She also has the intention of working part time so she could be home with her son on his return from school.
All this is in her best interest; but, the question before the court is the child’s best interest. (Matter of Tropea v Tropea, 87 NY2d 727, 739.) The court finds that it is not in the child’s best interest, and, therefore, must deny her petition. Under Tropea (supra, at 740-741) the court is required to give appropriate weight to all of the factors that may be relevant to the determination: "we hold that, in all cases, the courts should be free to consider and give appropriate weight to all of the factors *401 that may be relevant to the determination. These factors include, but are certainly not limited to each parent’s reasons for seeking or opposing the move, the quality of the relationships between the child and the custodial and noncustodial parents, the impact of the move on the quantity and quality of the child’s future contact with the noncustodial parent, the degree to which the custodial parent’s and child’s life may be enhanced economically, emotionally and educationally by the move, and the feasibility of preserving the relationship between the noncustodial parent and child through suitable visitation arrangements.” Applying the Tropea analysis to this case the court makes the following findings.
Neither parent has nefarious or ulterior motives for requesting or opposing the move. Both parents recognize the importance of the other parent in the child’s life. Their relationship hasn’t always been smooth, but it has been adequate so that the child is not traumatized by a malevolent relationship.
The court, however, is concerned that such a move would leave the father without meaningful access to the child, causing a valuable asset in the child’s life to be diminished. Slowly but surely this long-distance relationship between father and son would wither or at least weaken as the child grows older, and the prospect of leaving school friends, missing sporting events or other activities held during recess or during summers becomes less attractive to a youngster.
The continued loving relationship with the extended family of both the child’s father and his mother, all of whom are in New York State and some here in Ulster County, would also be lessened. His maternal grandmother and her family are only as far as Long Island. In North Carolina there is no one.
Not only the quantity but the quality of the child’s contact with his father and his extended family would be in jeopardy as a result. This is especially true in these formative years, when cousins, uncles, aunts, and grandparents are so important, not only for the holidays, but during school time for school events, sporting activities, etc.
There is no doubt that Ms. Stearns’ economic well-being will be indirectly enhanced by her move to her fiancé’s home. There is no proof in this record, however, that she will be moving to a better job with more opportunity for advancement aside from her speculation based on the want ads of local newspapers.
Speculative also is the schooling situation. She has made calls to various local schools and advises that there is some *402 flexibility in North Carolina about where a child may attend school. There are apparently some models which allow a child to attend school for 45 days and thereafter have 15 free days. While this would allow some extended periods of visitation during the school year, the unknown factor is what effect this will have on young Anthony’s fine academic record. All concede he is doing well in the traditional setting in the Marlboro School District. There is no proof that the educational plan for the child would enhance his already good academic achievements. In fact, there is an obvious question which remains unanswered by the Petitioner, i.e., will such a move cause an emotional and psychological upheaval in a seven-year-old child which will hinder rather than advance his educational development.
The travel required by the child in the proposal of the Petitioner causes concern to the court as well. Surely a seven year old can use air transportation alone with the airline’s supervision. At a young age, however, it would seem that these sojourns should be limited to special occasions and not result in turning this seven year old into a weary and disoriented frequent flier with more miles than a corporate executive.
The child’s best interest will be best served by having the continued and almost daily input from both parents. If that is not possible, he should not be thrust into a new environment without the proximity of his father and extended family. Compounding this unfavorable result would be the added requirement of starting a new academic life in another State, arranged as an unnecessary experiment in learning.
Finally the court finds that it is not feasible to consider a parallel move of this distance by Respondent as a potential resolution of the dilemma. (Matter of Tropea v Tropea, supra, at 740.)
Accordingly, based on all of the proof, this court finds that it has not been established by a preponderance of the evidence that the proposed relocation would serve the child’s best interest. Therefore, the custody of Anthony Baxter, Jr. will remain with Ms. Stearns only if she remains a full-time resident within Ulster County, with visitation to Anthony Baxter, Sr. on alternate weekends from Friday evening until Sunday evening and the parties sharing major holidays and summers, or as may otherwise be agreed upon by the parties.
If Petitioner relocates outside of Ulster County, custody will be transferred to Mr. Baxter with reasonable visitation on reasonable notice to Ms. Stearns, as the parties may agree upon. *403 At a minimum, however, the summer school recess as well as the major holiday recesses will be shared equally (or as the parties otherwise agree). The Petitioner mother may also have reasonable visitation during any return visits to the Ulster County area provided the visitation does not interfere with school. The forgoing does not preclude visits to North Carolina at other times for special occasions or as the parties may agree.

. Petitioner is now employed full time at a human service agency with a salary of approximately $20,000 per annum.